JOAB HAPGOOD *vs.* FRANK SHAW & another.
FRANK SHAW & another *vs.* JOAB HAPGOOD.

A. signed and delivered to B. the following agreement: "Received of B. $100 on account of guns shipped by us per invoice, and now in bonded warehouse, which guns we promise to deliver to B. on June 1, or at such time as he shall order previous to that date, upon payment of balance of invoice with freight, charges and interest." B. paid the $100, and agreed orally to receive the guns on or before June 1, but up to June 1 A. never delivered or offered to deliver the guns to B., or made to him any statement or demand of the amount of the sums to be paid by him for them, and B. never requested any such statement or paid or offered to pay the said amount. After June 1, A. requested B. to take and pay for the guns, but he refused to do so, whereupon A. sold them. *Held,* that A. could not maintain an action against B. for refusal to accept and pay for the guns; nor could B. maintain an action against A. to recover the $100 paid on account.

TWO ACTIONS OF CONTRACT; the first by Hapgood against Frank Shaw and George Warren, to recover back $100 paid for guns which never were delivered; the second by Shaw and Warren against Hapgood, to recover for his refusal to accept and pay for the guns. The actions were tried together in the superior court, before *Devens*, J.

It appeared at the trial, that Hapgood, who was a dealer in guns in Boston, ordered guns from Joseph Child, a manufacturer 'n England, through Shaw and Warren, who were shipping merchants doing business in Boston and Liverpool under the name of Warren & Company; that Child sent the guns ordered, and also others not ordered, to Warren & Company, who paid for them and shipped them to America without authority; that Warren & Company signed and delivered to Hapgood, on the day of its date, the following agreement: "Boston, March 30, 1864. Received of Joab Hapgood $100 on account of guns shipped by us per invoice about £90 sterling from Joseph Child,

and now in bonded warehouse in New York, which guns we promise to deliver to said Hapgood on the first day of June next, or at such time as he shall order previous to that date, upon payment of balance of invoice with freight, charges and interest to date of remittance due in England;" that the guns mentioned in this agreement were the guns above mentioned as shipped by Warren & Company; that Hapgood, at the time of the execution of this agreement, paid the $100, and agreed orally to receive the guns on or before June 1, 1864; that the guns were shipped and placed in the warehouse in the name of Warren & Company; "that from the date of the agreement until June 6, 1864, Warren & Company never delivered or offered to deliver the guns to Hapgood, or made to him any statement or demand of the amount of the sums to be by him paid for them; that Hapgood never requested any such statement, or paid or offered to pay the said amount; that on June 6, 1864, Warren & Company requested Hapgood to take and pay for the guns, which he refused to do; and that the guns remained in the bonded warehouse in New York from October 1863, when they arrived from Liverpool, until July 1864, when they were sent back to Liverpool and sold by Warren & Company."

Shaw testified " that the items of charges upon the guns could not be ascertained until the goods were removed from the bonded warehouse; that if Hapgood had received the guns in the fall of 1863, after they were placed in the warehouse, he would have paid to Warren & Company the freight and invoice, and received an order authorizing the guns to be taken from the bonded warehouse, and would have sent there for them and then paid the warehouse charges."

By consent of the parties the judge withdrew the cases from the jury and reported them for the determination of this court; the parties agreeing " that if the court should be of opinion that the first case could be maintained on the foregoing evidence, so far as competent, judgment should be entered for the amount claimed in the declaration, with interest from the date of the writ, otherwise for the defendant; if the court should be of opinion that the second case could be maintained for substantial damages, the case

should be sent to an assessor to determine the amount of damages, otherwise judgment be entered for the plaintiff for nominal damages, or for the defendant, if the action cannot be maintained at all."

*G. F. Hoar & T. L. Nelson*, for Hapgood.

*F. P. Goulding & H. B. Staples*, for Shaw and Warren.

WELLS, J. Whether the contract between the parties was a sale and purchase of the guns, or an agreement to adopt the acts of Warren & Company, and adjust their advances and expenses in the execution of an agency assumed by them without authority, is immaterial to the decision of these cases. The rights and liabilities of the respective parties here must be determined by the provisions of their mutual agreement. Both actions are founded on that agreement. Warren & Company sue for the balance due under it; Hapgood for a return of his money, on the ground of a default by Warren & Company in not delivering the guns.

It is also unnecessary to determine whether, under this agreement and the circumstances affecting it, the guns were to be transported and delivered specifically at Boston by Warren & Company, or whether a delivery by an order upon the warehouse in New York, subject to the payment of the charges there, would be a sufficient delivery to meet the requirements of the written agreement. Warren & Company have not made, nor offered to make, a delivery in either form, until after the time fixed by the terms of their agreement for such delivery.

If this had been an absolute, independent agreement, on the part of Warren & Company, they would have been in default, upon the facts here shown. But the case finds a mutual agreement. Hapgood, at the time of executing the written contract by Warren & Company, orally agreed " to receive the goods on or before June 1 ; " and this, with the acceptance of the writing, implied a promise to pay the balance as stipulated therein. The written contract, by its express terms, engages for the delivery, only " upon payment of balance of invoice with freight, charges and interest." These are mutually dependent stipulations. The acts of performance by each party are to be concurrent. There

is nothing to be done by either, which by the terms of the agreement, or from the necessity of the case, must precede any action by the other.

It is urged in behalf of Hapgood, that he could not pay until furnished with a statement of charges. But we do not see that Warren & Company were under any obligation to furnish such a statement except upon request and offer of payment, or notice of readiness to pay.

No place is specifically agreed on for the performance; so that neither party is in default for not being in readiness at such place.

The report states, that from the date of the agreement until June 6 "Warren & Company never delivered or offered to deliver the guns to Hapgood, or made to him any statement or demand of the amount of the sums to be by him paid for them; that Hapgood never requested any such statement, or paid or offered to pay the said amount."

Upon that statement, neither party is in default; neither can hold the other for a breach of the agreement. Hapgood was bound to pay only upon delivery of the guns, and Warren & Company were bound to deliver the guns only upon payment. Upon such an agreement, if both parties remain inactive, there is no breach by either. If either would charge the other upon it, he must put him in default. He must show a refusal by the other party to perform, or some act or neglect on his part which may be regarded as equivalent to a refusal. Unless excused from performance on his own part, by the refusal of the other party to perform, or some conduct equivalent to a refusal, he must show that he has offered to perform his part of the agreements; or at least that he gave notice of his readiness to perform, or, being thus ready, requested performance by the other party. Failing to do that, he cannot charge the mere neglect of the other party to take any action, as a refusal to perform, or as a breach of the agreement. *Gardiner* v. *Corson,* 15 Mass. 500. *Dana* v. *King,* 2 Pick. 155. *Hunt* v. *Livermore,* 5 Pick. 395. *Kane* v. *Hood,* 13 Pick. 281. *Tinney* v. *Ashley,* 15 Pick. 546. *Cook* v. *Doggett,* 2 Allen, 439. *Smith* v. *Boston & Maine Railroad,* 6

Allen, 262.  *Cobb* v. *Hall*, 33 Verm. 233.  *Howard* v. *Miner*
20 Maine, 325.  *Green* v. *Reynolds*, 2 Johns. 207.  *Parker* v.
*Parmele*, 20 Johns. 130.  *Callonel* v. *Briggs*, 1 Salk. 112.  *Collins* v. *Gibbs*, 2 Burr. 899.  *Jones* v. *Barkley*, 2 Doug. 684.  It
follows, that in these suits neither party can recover on the
ground of a breach of contract by the other.  Nor can Hapgood maintain his action for a return of the money paid by him
on account of the agreement.  His only remedy is upon the contract itself ; unless he can treat that as rescinded.  *Thompson* v.
*Gould*, 20 Pick. 134.  *Hudson* v. *Swift*, 20 Johns. 24.  *Congdon* v. *Perry*, 13 Gray, 3.

The contract was binding upon both, and could be rescinded
only by the concurrence of both.  The act of Warren & Company, in sending the guns back to England and selling them
there, did not entitle Hapgood to treat the contract as rescinded ;
because they had, before doing so, " requested Hapgood to take
and pay for the guns, which he refused to do."  After that refusal, he could not require them to hold the guns longer for his
benefit, nor to account to him for the money advanced towards
their cost.  *Ross* v. *Tremain*, 2 Met. 495.  There having been
no previous breach of the agreement on the part of Warren &
Company, Hapgood's refusal to carry it into effect, upon their
offer to do so, deprived him of the right afterwards to treat it as
rescinded.  Chit. Con. (8th Am. ed.) 636.

According to the terms of the reservation, the entry must be in
each case                          *Judgment for the defendant.*