MAURICE LEIGH & another vs. ALBERTA E. RULE.

Middlesex.   April 6, 1954. — September 29, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Contract*, Performance and breach, For sale of real estate, Modification.
   *Practice, Civil*, Ordering verdict; Variance; Exceptions: what ques-
   tions open; Jury issues.

Certain evidence, although uncontradicted, did not as matter of law re-
   quire a finding that the parties to a contract for sale and purchase of
   real estate orally agreed to an extension of the time for performance.
   [667]
An exception by the defendant in a suit in equity to the denial of a mo-
   tion, not based on the pleadings, for a directed answer in his favor on
   an issue tried to a jury did not open any question of variance in this
   court and must be overruled if there was evidence supporting an answer
   favorable to the plaintiff under any form of pleading.   [667–668]
Under a contract for sale and purchase of real estate requiring the seller
   to give the buyer "full possession of the . . . premises, free of all
   tenants," at the time set for passing papers and providing that if the
   seller should be "unable to give title or to make conveyance as above
   stipulated, any payments made under" the contract should "be re-
   funded, and all other obligations of either party [t]hereunto . . .
   [should] cease," the admitted fact that at the time for passing papers
   the seller was unable to give such possession excused a tender of per-
   formance by the buyer and entitled him to recover his deposit from
   the seller without proof of a tender.   [668–669]

BILL IN EQUITY, filed in the Superior Court on October 1,
1952.

Jury issues were tried before *Smith*, J.

*George M. Poland*, (*Ella M. Dolan* with him,) for the de-
fendant.

*J. Murray Howe*, for the plaintiff.

SPALDING, J.   The plaintiffs in this suit seek to recover a
deposit made by them under an agreement to purchase
real estate, and incidental damages.   At the request of the
defendant the following jury issues were framed: "1. Is the
defendant indebted to the plaintiffs in the sum of $750 as

claimed in paragraph 6 of the bill? 2. Is the defendant indebted to the plaintiffs in the sum of $50 claimed in paragraphs 7 and 8 of the bill?" It is agreed that the answers to these questions will settle the controversy.[1] At the close of the evidence the defendant presented a motion that the jury be directed to return a negative answer to each question. The motion was denied and the defendant excepted. The jury returned affirmative answers to both questions.

We summarize the evidence as follows: On June 14, 1951, the plaintiffs and the defendant executed an agreement whereby the defendant agreed to sell to the plaintiffs a parcel of real estate in Nantucket. Under the agreement the property was to be conveyed on or before November 1, 1951, at which time "Full possession of the said premises, free of all tenants," was to be delivered to the plaintiffs. The agreement further provided that "If the . . . [seller] shall be unable to give title or to make conveyance as above stipulated, any payments made under this agreement shall be refunded, and all other obligations of either party hereunto shall cease." At the time of the execution of the agreement a deposit of $750 on account of the purchase price was paid by the plaintiffs as provided in the agreement.

Between June 14, 1951, and October 26 of that year the defendant was in communication with the plaintiffs who "informed her or led her to believe that they meant to perform their part of the contract" on November 1, the date for performance fixed in the agreement. During this period the plaintiffs did nothing to cause the defendant to believe that they would not perform on that date. On or about October 24, 1951, the plaintiffs communicated with the defendant by telephone from New York, where they lived, that they planned to come to Nantucket on October 26 "for the purpose of consummating the agreement . . . on November 1." In that conversation the defendant "did not tell the plaintiffs . . . that substantially all her furniture was still in the house." The defendant saw the plain-

[1] Compare *Fitzgerald* v. *Fitzgerald*, 165 Mass. 471.

tiffs at Nantucket between October 26 and November 1
and on or about November 1, and the defendant did not
express to them "any doubt or dissatisfaction with respect
to their intention or ability to perform." The defendant
"admitted that she was not able to deliver full possession
of the premises free from all tenants on November 1," that
at that time the house was occupied by her and substan-
tially all of her possessions were in it, and "that, therefore,
she was not able to perform her part of the . . . contract
on November 1." The plaintiffs were not present at the
trial and called no witnesses. The evidence summarized
above was agreed upon or came from answers by the de-
fendant to the plaintiffs' interrogatories and a notice to the
defendant to admit facts.

The defendant testified that in her telephone conversa-
tion with the plaintiffs on October 24 she informed them
that she had been ill and would not be able to vacate the
house on November 1 and that "they assented"; that be-
tween October 26 and November 1 the plaintiffs "orally
agreed that . . . [the defendant] could have until No-
vember 18, 1951, to complete the conveyance and remove
her furnishings"; that she moved from the premises on
November 15; and that on that day she went to the bank
designated by the plaintiffs to obtain the balance of the
purchase price but could not get it and no part of the bal-
ance has been paid.

Mr. Sanguinetti, an attorney who had examined the title
for the savings bank which was to take a first mortgage of
$10,000 on the property, testified that the male plaintiff,
hereinafter called Leigh, told him while he was in Nan-
tucket between October 26 and November 2 or 3 that an
extension to November 18 or 21 had been agreed to. He
also testified that he called Leigh on the telephone on No-
vember 16 and informed him that the premises were no
longer occupied, and that Leigh stated that he was unable
to pay the balance of the purchase price of $4,250; that
Leigh then attempted to get the amount of the first mort-
gage increased and upon the bank's refusal to do so sought

a second mortgage from the defendant in the amount of
$4,000; that while the defendant was considering the mat-
ter he (Mr. Sanguinetti) drafted a second mortgage and a
note and mailed them to Leigh on November 16; that these
were duly executed by both plaintiffs, and together with a
check for $250 were mailed to Mr. Sanguinetti on Novem-
ber 20; and that the defendant told him she would not ac-
cept a second mortgage and he informed the plaintiffs of
that fact, returning to them the check, the note, and the
mortgage. The note and the mortgage dated November 20,
1951, and executed by the plaintiffs were introduced as ex-
hibits.

The bill of exceptions states that "the defence relied on
was that the plaintiffs and the defendant orally agreed to
extend the time for performance and that the plaintiffs
never were ready and able or offered to pay the defendant
the balance of the purchase price at the time finally agreed."

It cannot be said that the evidence required a finding
that the parties had agreed to an extension. Even though
the evidence on this point was uncontradicted, the jury were
not obliged to believe it. *Reardon Importing Co.* v. *Security
Trust Co.* 318 Mass. 304, 307, and cases cited. There may
well have been negotiations looking toward an extension, as
the execution by the plaintiffs of the second mortgage and
note strongly suggests, but it could not be said as matter
of law that the parties agreed upon one.

Admittedly, the defendant was not able to perform on
November 1, 1951. But the defendant argues that the
plaintiffs cannot recover because they pleaded that they
were ready, able, and willing to perform on the day fixed in
the agreement, and that they failed to prove this allegation.
The defendant's motion for a directed answer on the issue
whether the plaintiffs were entitled to recover their deposit
is in substance a motion for a directed verdict and does not
appear to have been based on the pleadings. It is settled
that an exception to the denial of a motion for a directed
verdict not based on the pleadings will not be sustained if
the evidence was sufficient in any legal form of declaring to

justify a finding for the plaintiff. *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 385. *Snow* v. *Metropolitan Transit Authority,* 323 Mass. 21, 24. *Melnick, petitioner,* 324 Mass. 524, 529. The question of a variance, therefore, is not open. This brings us to the question whether, apart from the matter of a variance, the plaintiffs were entitled to recover under any form of pleading. We are of opinion that they were.

The defendant contends that the plaintiffs could not recover without proof that they were ready, able, and willing to perform and offered performance, and that such proof was lacking. The general rule is that when performance under a contract is concurrent one party cannot put the other in default unless he is ready, able, and willing to perform and has manifested this by some offer of performance. Williston, Contracts (Rev. ed.), § 832. *Irvin* v. *Gregory,* 13 Gray, 215, 218. *Hapgood* v. *Shaw,* 105 Mass. 276, 279. *Cole* v. *Killam,* 187 Mass. 213, 216. *Hunt* v. *Bassett,* 269 Mass. 298, 302. *Beck* v. *Doore,* 319 Mass. 707, 710. *Marlowe* v. *O'Brien,* 321 Mass. 384, 386. But the law does not require a party to tender performance if the other party has shown that he cannot or will not perform. *Lowe* v. *Harwood,* 139 Mass. 133. *Schayer* v. *Commonwealth Loan Co.* 163 Mass. 322. *Foternick* v. *Watson,* 184 Mass. 187, 193. *Augello* v. *Hanover Trust Co.* 253 Mass. 160, 166–167. *Schilling* v. *Levin,* 328 Mass. 2, 5. Restatement: Contracts, § 306. Or, as was said in *Hapgood* v. *Shaw,* 105 Mass. 276, 279, one seeking to put the other party in default must show that he has offered to perform or has given notice of his readiness to do so "Unless excused from performance . . . by the refusal of the other party to perform, or some conduct equivalent to a refusal."

Here the plaintiffs did not tender performance but we think that in the circumstances tender was excused. It is conceded that on the day of performance the defendant still occupied the premises and that substantially all of her possessions were in it. She was unable therefore to give the plaintiffs "Full possession of the . . . premises, free of all

tenants," in accordance with the terms of the agreement. We think that it could have been found that this was "conduct equivalent to a refusal" so as to obviate the necessity of a tender on the plaintiffs' part. *Burk* v. *Schreiber,* 183 Mass. 35. *Leonard* v. *Wheeler,* 261 Mass. 130. *Weiner* v. *Simons,* 267 Mass. 327, 330. The law does not insist on useless ceremonies. *Schayer* v. *Commonwealth Loan Co.* 163 Mass. 322, 324. *Schilling* v. *Levin,* 328 Mass. 2, 5.

There was evidence that the plaintiffs paid $50 to Mr. Sanguinetti for a title examination of the property here involved. As stated above, the jury in their answer to the second issue submitted to them determined that the plaintiffs were entitled to this amount. The defendant's position is that the plaintiffs pleaded a right to recover only on that provision of the contract which provided for a refund of the deposit and a termination of all obligations under the agreement in the event that the defendant should be unable to convey. The short answer is that the plaintiffs did not so limit their pleading but under the seventh and eighth paragraphs of their bill sought special damages for expenses incurred by them by reason of the defendant's failure to carry out her agreement. Plainly on the pleadings this issue was open. Since the defendant's argument is confined to the issue of pleading, we do not reach the broader question of the right to recover damages of this sort in circumstances like the present. See Annotation in 48 A. L. R. 59.

*Exceptions overruled.*