HENRY J. QUINN *vs.* THOMAS A. BOWLER & others.[1]

Hampden.   January 8, 1970. — April 13, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Option.   Corporation,* Stockholder.   *Bills and Notes,* Validity.

In a suit in equity respecting the internal affairs of a business corporation managed jointly by the plaintiff and two defendants who had each bought stock in the corporation from the plaintiff under an agreement giving him an option to repurchase the stock within one year of the sale, findings by a master warranted conclusions that the plaintiff was not excused from tendering the repurchase price within such time by any unequivocal inability or unwillingness to perform on the part of the defendants, although letters purporting to exercise the option were unanswered and an offer by the plaintiff to one of the defendants only to repurchase his stock was refused, and that the plaintiff, who never had available the repurchase money required to make a tender, did not properly and seasonably exercise his option to repurchase and it expired by its own terms.   [270]

Findings by a master in a suit in equity respecting the internal affairs of a business corporation owned and managed jointly by the plaintiff and two defendants clearly showed that a demand promissory note held by the plaintiff and purportedly executed by him as president and treasurer of the corporation and payable to himself individually, which the defendants were informed was intended to protect the plaintiff if the corporation went into bankruptcy, was null and void, and a decree should be entered ordering the plaintiff to surrender the note to the corporation for cancellation.   [270–271]

BILL IN EQUITY filed in the Superior Court on November 18, 1963.

---

[1] William E. Skinner, The Bud, Incorporated, and J. Wilbur Murray.

The suit was heard by *Sgarzi*, J., on a master's report.
*Michael J. Flaherty* for the plaintiff.
*Timothy J. Howes* for the defendants.

WILKINS, C.J.  This bill in equity arises out of the affairs of The Bud, Incorporated (Bud), a corporation of Massachusetts with its place of business in Holyoke, where it engaged in the sale of alcoholic beverages.

The prayers against Bowler and Skinner are to enjoin them from entering Bud's premises and from exercising any authority over its direction; for an accounting; for an adjudication that they are not bona fide stockholders; and for the appointment of a receiver.  A prayer against Bud is for an injunction against alienation of property.  No relief is sought against Murray.

With their answer Bowler and Skinner filed a counterclaim alleging that Quinn had converted funds of Bud; had threatened employees and customers with a deadly weapon; had misappropriated property and funds of Bud; and had committed other wrongs.  The counterclaim prays that Quinn be required to render an accounting; and be enjoined from abstracting goods and monies of Bud, and from threatening anyone on the premises with a deadly weapon.  In their answer Bowler and Skinner join in the prayers for an accounting and for the appointment of a receiver.

Murray was appointed receiver of Bud by the court and began the discharge of his duties December 2, 1963.

A master was appointed, who filed a report which was confirmed by an interlocutory decree, from which Quinn appealed.  A final decree dismissed both the bill and counterclaim.  From the final decree there were appeals by Quinn and by Bowler and Skinner.

The master made subsidiary and ultimate findings of fact. We summarize some of the ultimate findings.

The capital stock of Bowler and Skinner in Bud was purchased from Quinn on December 15, 1961.  As part of the purchase price each delivered a promissory note in the amount of $3,000, payable in $1,000 instalments in thirty days, sixty days, and one year, respectively.  Both made

the first two payments and attempted in good faith to make the final payment when it became due, but Quinn refused to accept such payments when Bowler and Skinner tendered them.

According to the agreement by which Bowler and Skinner purchased their stock from Quinn, the latter was given an option to repurchase within one year. On October 8, November 6, and December 14, all in 1962, Quinn's attorney wrote them that Quinn desired to exercise his option, but at no time did he make tender of the requisite amounts, and at no time was ready, able, and willing to make such tender. In January, 1963, Quinn met with Bowler and Skinner and the three agreed to continue to operate Bud. "Insofar as it is a question of fact," Quinn by such agreement waived his prior attempts to exercise his option.

Following their meeting and agreement Bowler and Skinner each devoted substantial time and effort to the business and affairs of Bud, and for such time and effort received substantially less than a fair remuneration. "Insofar as it is a question of fact," the bill to the extent that it is based upon Quinn's attempted exercise of his option to repurchase the stock is barred by Quinn's laches. The finding of laches is the basis of Quinn's appeal from the interlocutory decree confirming the master's report. This appeal is without merit. What constitutes laches is a question of fact. *McGrath* v. *C. T. Sherer Co.* 291 Mass. 35, 59–60. The interlocutory decree confirming the report was correct.

Since December 15, 1961, Quinn, Bowler, and Skinner have acted as, and have been recognized by all parties in interest as, the only directors; and Bowler and Skinner have acted as, and been regarded by all parties as, the clerk and treasurer, respectively. Quinn is the president and a director, and has been designated with the licensing authorities of Holyoke as the manager. The affairs of Bud have in fact been managed since December 15, 1961, by Bowler and Skinner as well as by Quinn. This joint man-

agement has been by agreement of all parties. Quinn has gradually abandoned his voice in the management, but has not been prohibited by Bowler or Skinner from participating in such management.

On or about August 29, 1963, Bowler committed an assault and battery upon Quinn as a result of an incident pertaining to the corporation. On several occasions prior to that date and on one occasion subsequent thereto Quinn threatened either Bowler or Skinner, or both, with a pistol. During the period from August 29 and ending December 2, 1963, Bowler had full charge of the affairs and property at Bud. He is unable to account for $400.26 of the funds of Bud received by him during that time. This failure is due not to any misappropriation but to poor bookkeeping and accounting methods.

Quinn is the holder and payee of a promissory note of Bud for $14,000 dated December 15, 1961. The note has never been authorized nor ratified by either stockholders or directors and was without any real consideration of any kind. The note was never intended as a binding obligation of the corporation. The material subsidiary findings are in part that when Skinner and Bowler first learned of the note they were informed that it was intended to protect Quinn if the corporation went into bankruptcy. There was a false record of a meeting prepared by Quinn's wife which stated that a special stockholders' meeting was held on December 15, 1961, at which the note was authorized. "Insofar as it is a question of fact," the note is null and void.

During the period from December 15, 1961, and ending August 28, 1963, the affairs and property of the corporation were managed by Quinn, Bowler, and Skinner in accordance with their mutual agreement. "[T]herefore, insofar as it is a question of fact, no one of the individual parties can be properly held accountable to the others for the funds of the corporation received and expended during that period of time."

In his brief Quinn argues that "[t]he prevailing and controlling issue" is whether he properly and seasonably ex-

ercised his option to repurchase stock he sold to Bowler and Skinner as required by their written agreement of December 15, 1961. In so doing he makes certain claims which are at variance with the master's report. For example, he states that "the master found that Quinn had actual knowledge that Skinner would not re-convey his stock," and from this it is sought to show that tender was unnecessary. The plaintiff's statements are refuted by the subsidiary findings of the master. These follow. Prior to October 8, 1962, Quinn approached Skinner and offered to purchase his interest for $3,500, which was the amount of Skinner's investment ($3,000) plus $500. Quinn's purpose in making such an offer was to acquire control of the corporation and reduce Bowler to the position of a minority stockholder without purchasing Bowler's stock. Skinner, however, refused to sell his stock on those terms. Consequently, on October 8, 1962, Quinn caused his attorney to write both Skinner and Bowler that Quinn desired to exercise his option and requested that they get in touch with him personally or through their attorneys. Neither Skinner nor Bowler replied. On November 6, 1962, and on December 14, 1962, Quinn's attorney again wrote Skinner and Bowler "in an effort to exercise the option." In the November 6 letter he asked that they or their attorneys get in touch with him in order that arrangements could be made to purchase the stock. In the December 14 letter he threatened legal action to enforce the option. Neither Skinner nor Bowler replied to either letter. Quinn never in fact had available the $8,000 required. He expected to be able to borrow the amount but never made the loan. Consequently, he never made tender of cash or its equivalent to either Skinner or Bowler in order to exercise his option. After the beginning of 1963 the three principals and their respective attorneys met in an effort to resolve their differences. At that meeting no mention was made of Quinn's option or of his efforts to exercise it. As a result of the meeting the parties resumed their relationship in the conduct of the business, and resolved to make a further effort toward its successful operation. Quinn

made no further effort to enforce the option until this suit was commenced on November 26, 1963.

These findings amply justified the ultimate findings of the master on this point. In order to excuse his own tender, a party must show that the other party cannot or will not perform. *Leigh* v. *Rule,* 331 Mass. 664, 668, and authorities cited. *Vander Realty Co. Inc.* v. *Gabriel,* 334 Mass. 267, 270–271. *Siegel* v. *Shaw,* 337 Mass. 170, 174–175. The showing of inability or unwillingness to perform must be unequivocal. Skinner's refusal of the $3,500 offer and the failure to answer letters in the circumstances set forth by the master were not unequivocal.

We conclude that Quinn did not properly and seasonably exercise his option to repurchase. We do not rely on waiver or laches.

Accordingly, the adjudication sought by prayers 5 and 6 of the bill of complaint, that neither Bowler nor Skinner is a bona fide stockholder, could not properly be made. There should be an adjudication that Quinn did not properly or seasonably exercise his option and that the option expired by its own terms.

The defendants argue that orders should be entered (1) for the surrender of the original stock certificate by Murray to the corporation; (2) for the issuance of certificates in accordance with the master's findings; and (3) for the surrender by Quinn of the $14,000 note. Items (1) and (2) were not the subjects of counterclaim by the defendants, and no order is now made. *Westfield Sav. Bank* v. *Leahey,* 291 Mass. 473, 476. *George C. Miller & Co. Inc.* v. *Beagen,* 293 Mass. 54, 61. *Seder* v. *Kozlowski,* 304 Mass. 367, 371.

The third order sought should be made. It is consistent with the sixth prayer of the counterclaim to the effect that the plaintiff be permanently enjoined from abstracting moneys from the corporation for his own use except for labor actually performed on the premises at a rate to be set by the board of directors. It seeks the surrender of a demand note for $14,000 dated December 15, 1961, which was executed by Quinn purportedly as president and treasurer on

behalf of the corporation to himself individually. The ultimate findings clearly show that the note was never authorized nor ratified by the directors, was without consideration, and was never intended to be a binding obligation. An order should be entered that Quinn surrender the note for cancellation.

The judge apparently intended to put an end to the remaining mutual claims between the plaintiff and the defendants and this, we think, would be a wise disposition of such matters because of the confused nature of the accounts.

The interlocutory decree confirming the master's report is affirmed. The final decree is reversed. A new final decree is to enter (1) declaring that the plaintiff did not properly and seasonably exercise his option to repurchase the stock he sold to the defendants Skinner and Bowler, and that the option is void; (2) declaring that the $14,000 note is not binding on the defendant corporation, and ordering that the plaintiff surrender the note to the corporation for cancellation; and (3) denying the remaining mutual claims between the plaintiff and the defendants.

*So ordered.*