EDGAR L. KELLEY & others[1] *vs.* WEYERHAEUSER COMPANY. June 30, 1981. The plaintiffs brought an action in the Superior Court seeking the return of $35,000 which had been deposited with the defendant incident to the signing of a purchase and sale agreement wherein the plaintiffs had agreed to purchase certain land of the defendant. The parties entered into stipulations of facts and exhibits and, after hearing testimony supplementing the stipulation of facts, a judge, sitting without jury, entered judgment for the plaintiffs for $35,000 and dismissed the defendant's counterclaim for attorney's fees. The defendant appealed. The controversy swirls around an interpretation of certain language contained in the purchase and sale agreement (agreement). On or about October 1, 1976, the defendant and the plaintiff Kelley, individually and as attorney-in-fact for the other plaintiffs, signed an agreement wherein the defendant agreed to sell to Kelley for $350,000 certain parcels of land in Fitchburg and Westminster. Kelley paid a deposit of $35,000, as provided in the agreement. The agreement stated, among other things, that "[t]he premises are to be conveyed by a good and sufficient corporate Quitclaim Deed of the Seller, per Exhibit A . . . ." The exhibit referred to in the agreement was a draft deed physically attached and incorporated into the agreement. In the draft, it was provided that the buyer would take the property "SUBJECT . . . to easements and restrictions of record and to unrecorded rights, if any, of others." In regard to other encumbrances, the agreement expressly provided: "If at time of closing there are title encumbrances (defects) *other than those provided for herein* and Buyer is unwilling to waive such other title encumbrances (defects), Seller shall refund the $35,000 consideration paid to Buyer whereupon this agreement shall be terminated" (emphasis supplied). The plaintiffs claimed that two defects were found during a title examination which rendered title unmarketable, that they did not waive them, and that the defendant wrongfully kept their money. The two "defects" were a recorded "flow agreement"[2] and an unrecorded "revised agreement."[3]

---

[1] Paul F. Keating and Frank Whidmayer.

[2] The "flow agreement" made between the defendant, the city of Fitchburg and the United States Environmental Protection Agency obligated the defendant to maintain a specified minimum flow of water in the Nashua River to the extent that the defendant could control such flow through certain named reservoirs located on its properties.

[3] The "revised agreement" made between the defendant and the city of Fitchburg concerned the defendant's obligations to make payments with respect to the

1. As a matter of law, Kelley agreed to take title subject to any recorded easements and restrictions, as well as unrecorded rights, which may have been in existence at the time of the signing of the agreement. The "flow agreement" and the "revised agreement" were specifically within the meaning of the title exception. The recorded "flow agreement" was a "restriction" which imposed an affirmative obligation upon the defendant. See Park, Real Estate Law, § 335 (1981). The unrecorded "revised agreement" was an instrument under which the city of Fitchburg has the "right" to require the defendant to make payments for the construction and use of a waste water treatment facility. In addition, it did not appear that either of the two "agreements" was an encumbrance. The "flow agreement" did not touch or concern the parcels that were the subject of the purchase and sale agreement. See *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 90 (1979). The "revised agreement" constituted nothing more than a personal covenant on the part of the defendant and did not constitute an encumbrance on any of the seller's properties. 2. The judge's finding that the defendant had to comply with G. L. c. 62C, § 51 (formerly c. 63, § 76), in order to transfer the property was error as a matter of law, as the sale by the defendant was not a transfer of all or substantially all of its assets in Massachusetts. 3. The opinion of the plaintiff's title expert that the property was not marketable was erroneous as a matter of law. 4. There was no evidence which would have warranted a finding that the defendant ever agreed to a modification of the portion of the draft deed which spelled out the quality of the title which the defendant agreed to deliver. 5. The evidence did not warrant a finding that the defendant made an affirmative repudiation of the agreement. See *Leigh* v. *Rule*, 331 Mass. 664, 668 (1954). 6. The failure of Kelley to appear at the closing and make a tender of the purchase price entitled the defendant to keep the deposit, and the judge erred in holding that the $35,000 was a forfeiture when it was agreed by the parties in the agreement that the deposit should constitute liquidated damages and the plaintiffs had neither alleged nor argued prior to or during trial that the liquidated damage clause constituted a forfeiture or was otherwise unenforceable. 7. In view of our decision, the judge was wrong in dismissing the defendant's counterclaim for attorney's fees, where the agreement specifically provided that "[i]f any action at law is brought under this contract, such sum as the court may allow as reasonable attorney fees shall be included in the judgement entered therein."

The present judgment is reversed and a new judgment is to be entered dismissing the complaint (see Mass.R.Civ.P. 54(b), 365 Mass 821 [1974]). The case is to stand for hearing on the counterclaim for attorney's fees, and for entry of judgment on the counterclaim.

*So ordered.*

construction, operation and repairs of a proposed waste water treatment facility on the Nashua River.

*James E. Wallace, Jr.* (*Christopher G. Mehne* with him) for the defendant.
*Philip D. Moran* for the plaintiffs.