Agnes, Peter W., J.
This is a civil action in which the plaintiff, Orbison Corporation, seeks the remedy of specific performance against the defendant, Randall B. Russ, as a result of a written offer to purchase real estate (OTP) that was signed by the parties in August 2002. The plaintiff and the defendant have filed cross motions for summary judgment under Mass.R.Civ.P. 56. Because there are no material facts in dispute and the plaintiff is entitled to judgment as a matter of law, the Plaintiffs motion is ALLOWED and the defendant’s motion is DENIED.
I. FACTUAL BACKGROUND
The OTP signed by the plaintiff is before the court (Plaintiffs Exhibit A). It is a form with blank spaces filled in by handwriting that bears a notation that it was published by the Greater Worcester Real Estate Board in December 2000. According to its terms, the plaintiff offered to purchase a specifically described parcel of real estate (“73 Wallis St., 4.25+/- Acres”) from the defendant for a purchase price of $180,500.00. The OTP provides for and the plaintiff tendered to the defendant a deposit in the amount of $500.00. See Plaintiffs Exhibit C (check no. 7463). The OTP provides further for a deposit of $9,000.00 to be paid “upon execution of Purchase and Sale Agreement” with the balance due in cash at the closing. See Plaintiffs Exhibit A. The OTP adds that the buyer’s obligation will cease if it is not accepted by the seller prior to August 9, 2002. A line for the seller’s signature is contained on the offer form. The offer includes three specific contingencies: (a) municipal approval for a subdivision of the locus into two lots; (b) acceptable percolation and deep hole testing; and (c) that buyer use due diligence to accomplish (a) and (b). Plaintiffs Exhibit A. The OTP also calls for the seller to deliver to the buyer “a good record and marketable title.” Finally, the OTP sets forth a process for determining the closing date by indicating that the seller is to deliver a deed to the buyer “15 days after gaining approvals” necessary to create the two buildable lots. See Plaintiffs Exhibit A. There is no provision in the OTP that time is of the essence. The seller signed the offer on August 9, 2002.
The dispute arises because the parties disagree about the legal significance of two printed terms contained in the agreement that are part of the original printed form. The first term is a header at the top of the form which states in capital letters: “THIS IS A LEGALLY BINDING DOCUMENT. IF YOU DO NOT UNDERSTAND IT, CONTACT YOUR ATTORNEY.” Plaintiffs Exhibit A. The second term appears about midway down the printed form (in small print) and reads as follows: “Within_days after acceptance of this offer, SELLER and BUYER shall execute a Purchase and Sale Agreement, not as a formality but as a complete expression of the parties’ intentions which, when executed, shall become the agreement between the parties.” Plaintiffs Exhibit A. The date for completing a P&S agreement was left blank by the parties. There is no other language in the offer that states or suggests it was merely the memorialization of certain business points between the parties, a preliminary document or a tentative agreement.
About five days after the parties signed the offer sheet, the defendant commissioned a professional engineering and surveying firm to perform a topographical survey and plan of the locus in anticipation of the application for a variance. See Plaintiffs Exhibit F (Affidavit of Normand Gamache and invoices). The plaintiff had arranged for the financing for the purchase by September 2002. See Plaintiff Exhibit F. The plan commissioned by the defendant was completed by September 25, 2002. See Plaintiffs Exhibit E. At about this time, the defendant signed the application for the variance. See Plaintiffs Exhibit G. The plaintiff paid the application fee for the variance petition and filed it with the appropriate zoning board in the Town of Douglas along with plan obtained by the defendant. Plaintiffs Exhibits C & H. On October 17, 2002, the plaintiff attended the Zoning Board of Appeals hearing with its counsel. See Plaintiffs Exhibit H. The variance was granted as requested on October 29, 2002. Plaintiffs Exhibit I. The percolation and deep hole testing was performed on October 30, 2002 at a cost of $1,370.00 to the plaintiff. The plaintiff-buyer paid the fee to have the Board of Health of the Town of Douglas oversee the testing. See Plaintiffs Exhibits H & J. The tests were successful in that they indicated that suitable septic systems could be constructed on the locus. See Plaintiffs Exhibit H, paragraph 6.
*353 On or about November 12, 2002, the attorney for the defendant-seller prepared and transmitted to the plaintiff a draft Purchase and Sale agreement (“P&S agreement"). See Plaintiffs Exhibit B at 18, lines 12-14. The draft included some proposed alterations to the earlier offer sheet. It proposed that the plaintiff-buyer would be required to pay all the costs of obtaining the variance and that if the agreement was terminated by the buyer, the defendant-seller would be allowed to retain all plans and engineering studies. It also proposed a closing date of seven days following Planning Board/Zoning Board of Appeals approval (versus the fourteen days set forth in the OTP) and an outer limit of December 30, 2002 for the closing. See Defendant’s Memorandum of Law at 2-3. In response, on or about November 18, 2002, counsel for the plaintiff proposed some additional alterations to the terms of the OTP among which were a provision to allow plaintiff to avoid the agreement if the conditions imposed by the municipality were “deemed to be onerous by the buyer.” The plaintiff also delivered to the defendant a check in the amount of $9,000.00. See Plaintiffs Exhibits C, H, R & S; Defendant’s Memorandum of Law at 3. There is no evidence that the plaintiff communicated to the defendant that the check was contingent on agreement with the proposed amendments to the OTP. The next day, November 21, 2002, the engineering firm commissioned by the defendant completed an ANR plan (approval not required) of the locus. On the day after that, the plaintiff and the defendant each signed a Douglas Planning Board application for an ANR endorsement of the ANR plan. The plaintiff paid the $100.00 fee associated with this submission. See Plaintiffs Exhibit C. Four days later, the Planning Board voted to endorse the ANR plan. See Plaintiffs Exhibit L. By this point in time, the defendant-seller was aware that the variance had been granted and the soil testing was complete. The defendant acknowledged that the only impediment remaining to a closing was the defendant’s need to obtain a partial release of a mortgage. See Plaintiffs Exhibit B at 19, lines 11-14; at 20, lines 1-4. Conversations between former counsel for the plaintiff and for the buyer occurred during December 2002, but were limited to the need for additional time to enable the defendant to obtain the partial discharge. At no time did the defendant, directly or though his counsel, suggest that it was his view that the plaintiff had breached their agreement. See Plaintiffs Exhibit M. In early January 2003, for the first time, the defendant’s former counsel informed plaintiffs former counsel that there was another buyer for the locus. See Exhibit M-2 and Exhibit B at 13, lines 2-9. There also came to light about this time statements attributable to the defendant indicating that he no longer needed the money that would result from the sale of the locus. See Plaintiffs Exhibit N and N-2. The instant case was filed promptly thereafter on January 14, 2003.
II. DISCUSSION
A. Standard for Granting a Motion for Summary Judgment.
“Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). The function of a motion under Mass.R.Civ.P. 56 is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Sup.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Thus, summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Also, summary judgment may be granted against the moving party, and may be granted as to certain issues but not others. See Community Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “(t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” Anthony’s Pier Four v. Crandall Dry Dock Engineering, Inc., 396 Mass. 818, 822 (1986), quoting National Assn of Gov’t Employees v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). “[A] toehold ... is enough to survive a motion for summary judgment.” Sheehy v. Lipton Indus., Inc., 24 Mass.App.Ct. 188, 194 (1987). However, “[a] complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, supra at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
*354 B. The OTP was a Binding Contract for the Sale of Real Estate.
The principal question raised in this case is whether by signing the OTP which contemplated the execution of a P&S agreement the parties nonetheless expressed their intention to be bound. See Situation Mgmt Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). See Kuzmeskus v. Pickup Motor Co., 330 Mass. 490, 493 (1953) (“It is a settled principle of contract law that ‘[a] promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract’ ”).
In the context of the sale of real estate, that question becomes whether the parties agreed to all the material terms of a contract for the sale of land when they signed the offer sheet in August 2002. McCarthy v. Tobin, 429 Mass. 87 (1999). The essential terms required by the McCarthy doctrine to establish a binding OTP are five — an adequate description of the property to be conveyed, the purchase price, something regarding the title to be conveyed, a deposit, and the date set for closing or some process for ascertaining the closing date. Id. at 88. The OTP sheet signed by the parties in this case meets the requirements of the McCarthy doctrine. The fact that the signed offer sheet in the present case goes further by spelling out three specific contingencies does not suggest otherwise because they are conditions subsequent to the agreement. Indeed, these conditions are a further indication that the parties had thoroughly thought through this transaction and clearly contemplated a transfer of the title to the locus unless one of several specific developments occurred. Contrast Blomdale v. Imprescia, 25 Mass.App.Ct. 144, 145 (1987) (Court concludes that a very brief OTP containing language that the prospective buyer would, if his offer was accepted, “sign your usual real estate agreement to cany this out and take title within on or before 90 days” did not create a binding agreement when signed by the prospective seller). Just like the offer form that was before the Court in the McCarthy case, the parties in this case were contractually bound to execute a P&S agreement because they had resolved all the significant economic issues in the OTP, see Goren, supra, 25 Mass.App.Ct. at 141, leaving the P&S Agreement to serve simply as the trigger for the plaintiffs second deposit. Leaving a blank in the space provided on the form for indicating the time by which a P&S agreement had to be executed was a further indication by the parties that they had reached an agreement on all the essential terms of the contract, and that the P&S agreement was to be a ministerial act. Contrast Levenson v. L.M.I. Realty Corp., 31 Mass.App.Ct. 127, 130-31 (1991) (in the OTP, parties referred to the need for a P&S agreement that would be “satisfactory” to them; court suggests that such language indicates an intention not to be bound by the OTP).
Thus, this is not a case in which there is a genuine conflict between language in an offer that indicates it is a binding contract and language that indicates the parties only intend to be bound by a signed P&S agreement. The nature of the OTP in this case suggests that the execution of a subsequent P&S agreement would be a mere formality. McCarthy v. Tobin, supra. In such a case, the controlling principle of law is that a contract should be interpreted “so as to make it a valid and enforceable undertaking rather than one of no force and effect.” Shayeb v. Holland, 321 Mass. 429, 432 (1947). Accord, Foss Mfg. Co. v. Malden Mills, Inc., Superior Court Docket No. 961606 (Essex Cty 5/24/99) (Whitehead, J.).
The fact that parties to a binding contract for the sale of land choose to later execute a P&S agreement and undertake some negotiation over its terms does not constitute repudiation of the contract. See Costello v. Pet, 17 Mass.App.Ct. 382, 387 (1984) (“a request for a modification accompanying an acceptance does not prevent the formation of a contract where it is clear that the offeree intended to accept!,] whether or not the modification was accepted”). See also Goren v. Royal Investment, Inc., 25 Mass.App.Ct. 137, 140 (1987) (the mere fact that parties to a signed offer sheet for the sale of land agree to negotiate over the terms of a P&S agreement is not “a talisman of the inchoate quality” of the original agreement). In Goren, the Appeals Court observed that among the subsidiary details that parties to a binding contract for the sale of real estate could leave open to be negotiated were the:
[S]tate of the title, conformance with local law, condition of the premises, extension provision to allow seller time to remove title defects, buyer’s right of election to accept a deficient title, performance to be merged in delivery of the deed, use of purchase money to clear title, maintenance of insurance at not less than eighly percent of sound insurable value, assignment of insurance, closing adjustments, holding of deposit by broker, and disclaimer of implied warranties.
Id. Here, the fact that the parties each sought to sweeten the deal for its own benefit by proposing some adjustments in the terms of their agreement does not detract from the binding nature of that agreement. The conduct of the parties after signing the P&S agreement, however, is relevant, and it may illuminate our understanding of whether they intended to be bound by the signed OTP. See Germagian v. Berrini, 60 Mass.App.Ct. 456 (2004) (plaintiffs conduct after signing the offer confirmed that he did not intend to be bound). Here, the initial agreement left no essential term unaddressed, and the uncontroverted evidence is that the plaintiff proceeded in a timely and methodical manner, in cooperation with the defendant, to address each one of the contingencies in the offer sheet in order to reach the point where the contingencies either would be fulfilled and the deal would be con *355 summated or the contingencies would not be satisfied and the parties could walk away from their agreement. The conduct of the parties on or about November 22, 2002 in jointly submitting an application for an ANR endorsement of the ANR plan is particularly informative in this regard and suggests that up to that point both sides were operating as if the deal would be consummated. Contrast, Coldwell Banker/Hunneman v. Shostack, 62 Mass.App.Ct. 635, 639-40 (2004) (following signing of OTP, parties entered into negotiations over an item that was material to the agreement but left unresolved in the OTP). In such a case, it was incumbent on the defendant-seller to include in the OTP some specific language making it unmistakably clear that the signing of a P&S agreement was not simply a ministerial act. See Goren, supra, 25 Mass.App.Ct. at 143 (suggesting a party not intending to be bound could insert language in the OTP as follows: “The purpose of this document is to memorialize certain business points. The parties mutually acknowledge that their agreement is qualified and that they, therefore, contemplate the drafting and execution of a more detailed agreement. They intend to be bound only by the execution of such an agreement and not by this preliminary document”).
C. Plaintiff Did Not Waive Its Rights by Failing to Tender Payment.
The defendant also maintains that even if the OTP was a binding agreement, the Plaintiff should be deemed to have waived its rights because it did not demonstrate it was ready, willing and able to perform by tendering the purchase price to the defendant or by some other concrete gesture. See Lafayette Place Associates v. Boston Redevelopment Authority, 427 Mass. 509, 519 (1998). However, the law does not require a party to engage in a useless act. See Leigh v. Rule, 331 Mass. 664, 669 (1954). The record before the court is clear that on the day set for closing in the OTP (fifteen days after the contingencies had been satisfied i.e., the percolation and deep hole testing and the subdivision into two lots was complete), the seller had yet to secure the partial release of a mortgage. The buyer, on the other hand, appears to have obtained its financing. The mortgage release still had not been obtained by mid-December 2002, see Plaintiffs Exhibit S at 89, when, after dialogue between counsel for the parties, the fact that another buyer had surfaced was first disclosed by counsel for the defendant. See Plaintiffs Exhibit O. There is further evidence that a telephone call took place between counsel on or about January 6, 2003 that reasonably led the plaintiff to conclude that the deal was not going to happen. See Plaintiffs Exhibit V. At no time during the course of dealings between the parties did the Plaintiff indicate any reluctance or reservation about closing the deal, but instead continued to press the defendant for resolution of the mortgage release. Under these circumstances, the Plaintiff had every right to file this lawsuit and seek the aid of the court within days of learning that the defendant had no intention of selling and was under no obligation to make a further gesture toward performance.
ORDER
In light of the evidence that the parties entered into a binding OTP, that plaintiff fulfilled its obligations under the agreement but the defendant did not, and that money damages are not adequate to redress a deprivation of an interest in land, see Greenfield Country Estates Ass’n Inc. v. Deep, 423 Mass. 81, 88 (1996), the plaintiff is entitled to specific performance. Accordingly, the plaintiffs motion for summary judgment is ALLOWED and the defendant’s motion for summary judgment is DENIED.